OPINION OF THE COURT
 

 Levine, J.
 

 On April 2, 1990, nine-year-old Christopher Knopp was dismissed from his second grade class at Cuyler Elementary School, which is part of Red Creek Central School District. When he attempted to cross Westbury Road, the Wayne County highway in the Town of Wolcott where the school is located, he was hit by a truck and severely injured. We must decide whether plaintiff submitted sufficient evidence to present triable issues on the respective liabilities of the School District, the County and the Town, precluding summary judgment in favor of any of those party defendants.
 

 That evidence, and reasonable inferences therefrom, is as follows. The school is located on the east side of Westbury
 
 *670
 
 Road. From the school, Westbury Road runs northward to the Village of Red Creek, where it becomes South Street. At the time of the accident, there was a sidewalk in the Village along the west side of South Street but no sidewalk on Westbury Road. Thus, students who walked home from school to the part of the Village west of Westbury Road had to walk north along the shoulder of the highway or trespass on private property north of the school, and at some point, cross the highway, before arriving at the beginning of the sidewalk. Nowhere on Westbury Road were there traffic signals or a crosswalk to assist the elementary school students in crossing the highway.
 

 In 1985, the School superintendent wrote a letter to the Chairperson of the Wayne County Board of Supervisors and Wolcott Town Supervisor, asking for an extension of the sidewalk from the Village line approximately 250 feet southward to the location directly across the street from the school driveway. In 1989, a second School superintendent wrote to the County Supervisor asking the County to extend the sidewalk to improve safety for students walking to and from school. There were other verbal communications to County officials expressing an imperative safety need for the sidewalk. Neither the County nor the Town took any action in response to these entreaties.
 

 The School District, as a safety precaution, had a longstanding policy of waiting until all of the school buses had departed before allowing walking students to leave the school grounds. On the day of Christopher’s accident, however, walking children including Christopher were allowed to start for home before the buses drove away from the school.
 

 As Christopher walked on the worn path through the northern neighbor’s lot to the spot almost directly across from where the sidewalk began, two of the buses made a right turn out of the school driveway onto Westbury Road and began heading north toward the Village of Red Creek to begin their route. Christopher and a second child ran across the highway right behind the first bus. Before reaching the sidewalk, where they could walk safely alongside the road, Christopher was hit by a pickup truck traveling south driven by Gordon Carvey. Carvey, who is no longer a defendant in this case, explained that he did not see Christopher because his view was obstructed by the first bus. The location of the accident was approximately 167 feet north of the northern boundary line of the elementary school.
 

 
 *671
 
 Kim Ernest, on behalf of her son Christopher and herself, sued Garvey, the Red Creek School District, the County of Wayne and the Town of Wolcott. Plaintiff claims, among other things, that the School District was negligent in failing to follow its own policy of not releasing walking students until after all of the school buses had departed from the school. She claimed that by failing to install a sidewalk and traffic control devices to remedy the dangerous highway condition on West-bury Road, the Town and County were negligent in their duty to take reasonable precautions for the safety of school children.
 

 Supreme Court granted summary judgment to the School District and the Town but not to the County. The Appellate Division modified, holding that the County was also entitled to summary judgment (251 AD2d 992). We granted leave and now modify again, concluding that the motions for summary judgment of the School District and the County should have been denied. The courts below correctly granted the Town summary judgment.
 

 I
 

 Plaintiff claims that Red Creek School District was negligent, because instead of following its long-standing policy of releasing walking students after the school buses left, it released Christopher before the buses left the area where those students commonly crossed Westbury Road to proceed to their homes in the Village of Red Creek. As a result, one of the buses obstructed the truck driver’s vision of Christopher and his vision of the truck.
 

 In
 
 McDonald v Central School Dist. No. 3
 
 (179 Misc 333 [Van Voorhis, J.],
 
 affd without opn
 
 264 App Div 943,
 
 affd without opn
 
 289 NY 800), we upheld the ruling of Supreme Court which recognized that, although a school district’s duty of care toward a student generally ends when it relinquishes custody of the student, the duty continues when the student is released into a potentially hazardous situation, particularly when the hazard is partly of the school district’s own making. In
 
 McDonald,
 
 the Board of Education adopted a rule that children alighting from school buses at stops opposite their homes were required to cross the street
 
 in front of
 
 the buses. Then Justice Van Voorhis wrote that, because “[t]he presence of the bus necessarily created some hazard” (179 Misc, at 336) by obstructing the views of the child and the drivers of overtaking vehicles, “the jury might well find that the Board assumed a duty to protect [those children] against the special danger
 
 *672
 
 which it had created”
 
 (id,.).
 
 Thus,
 
 McDonald
 
 stands for the proposition that a school district’s duty of care requires continued exercise of control and supervision in the event that release of the child poses a foreseeable risk of harm
 
 (see also, Bell v Board of Educ.,
 
 90 NY2d 944 [school held liable for negligent supervision off school property]).
 

 Pratt v Robinson
 
 (39 NY2d 554), relied upon by the courts below, is distinguishable. The plaintiff schoolchild in that case was hit by a truck while she was walking across a street on her way home
 
 “several blocks away
 
 from the [bus] stop”
 
 (id.,
 
 at 559 [emphasis supplied]). We held that, “the children
 
 having been set down in a safe spot,
 
 and
 
 nothing untoward having occurred in the course of their disembarkation,
 
 * * * [the school] bore no further duty to the child”
 
 (id.,
 
 at 560 [emphasis supplied]). Contrastingly here, Christopher was not released to a safe spot but to a foreseeably hazardous setting partly of the School District’s making. Thus, while a school has no duty to prevent injury to schoolchildren released in a safe and anticipated manner, the school breaches a duty when it releases a child without further supervision into a foreseeably hazardous setting it had a hand in creating.
 

 Here, a jury could find that the School District breached this legal duty by releasing Christopher to walk home before the school buses were out of the vicinity. The driver who struck Christopher explained that he did not see him because he ran into the southbound lane right behind one of the school buses traveling up Westbury Road. The averment of a long-standing school policy not to release the students who walk home until all of its buses had departed, in recognition of the enhanced risks caused by the presence of the buses, is evidence that the type of accident that occurred in this case was foreseeable. Thus, there are triable issues regarding the School District’s liability, precluding summary judgment dismissing plaintiffs claim against that defendant.
 

 II
 

 Plaintiff also made out a prima facie case of negligence on the part of Wayne County for failing to respond to repeated notice of the need for sidewalks or traffic signs, signals or markings on Westbury Road
 
 (see,
 
 Vehicle and Traffic Law § 1652-a). In 1985, Superintendent of Schools for the District wrote a letter to the County and Town Supervisor requesting an extension of the Village sidewalk southward, because students “are forced to walk in the road. This condition obviously creates a
 
 *673
 
 safety hazzard [sic].” In 1989, a successor superintendent wrote a second letter to that County official again requesting a sidewalk extension from the County, because “a continuation of the Village sidewalk to the school property would result in a greatly improved safety situation for those students electing to walk to and from school.”
 

 In
 
 Alexander v Eldred
 
 (63 NY2d 460), the plaintiff motorcyclist was hit on a City road by a car that did not stop at an intersection where the City had failed to install a stop sign. We held that “[o]ne who is injured in a traffic accident can recover against a municipality if it is shown that its failure to install a traffic control or warning device was negligent under the circumstances, that this omission was a contributing cause of the mishap, and that there was no reasonable basis for the municipality’s inaction”
 
 (id.,
 
 at 463-464).
 

 Thus, a subsequent case held that “when the State is made aware of a dangerous highway condition and does not take action to remedy it, the State can be held liable for resulting injuries”
 
 (Friedman v State of New York,
 
 67 NY2d 271, 286). Here, the foregoing communications were sufficient for a jury to conclude that the County was made aware of the hazardous road and traffic conditions for schoolchildren walking between the school and their homes in the Village, and failed to address the recognized dangers by implementing any safety measures whatsoever.
 

 Weiss v Fote
 
 (7 NY2d 579) does not immunize the County from liability to plaintiff. That case held that a defendant has qualified immunity “where a duly authorized public planning body has entertained and passed on the
 
 very same
 
 question of risk as would ordinarily go to the jury”
 
 (id.,
 
 at 588 [emphasis supplied]). Here, in response to a motor vehicle accident between a truck and school bus exiting the driveway, the County conducted a “sight distance” study to determine how close motorists had to be to the school’s driveway to see exiting vehicles. As a result, the speed limit was reduced from 55 to 30 miles per hour. The County might therefore have acquired qualified immunity from liability arising from an automobile accident involving a motor vehicle exiting the school driveway. The County concedes, however, as the Appellate Division found, that the 1983 study “did not address schoolchildren crossing Westbury road in the vicinity of the school” (251 AD2d, at 994). Thus, the 1983 study does not confer upon the County any immunity from liability to plaintiff, a pedestrian schoolchild crossing Westbury road walking away from the school. Indeed, the
 
 *674
 
 County received the notice regarding the danger to walking children
 
 after
 
 the 1983 study. Thus, there was evidence that the County ignored warnings given after the 1983 study disclosing a different risk to children than was addressed in that study. Disregard of those later warnings could afford a basis for liability
 
 (see, Alexander v Eldred, supra,
 
 at 466;
 
 Friedman v State of New York, supra,
 
 at 286).
 

 Plaintiffs proof also created a triable issue on proximate cause with respect to the County’s negligence. “Proximate cause is a question of fact for the jury where varying inferences are possible”
 
 (Mirand v City of New York,
 
 84 NY2d 44, 51). Here, a jury could infer that, had the sidewalk been extended to a point opposite the school driveway, students walking home would have crossed the roadway there and would not have trespassed on private property adjacent to the school or walked on the road to a more northerly point before crossing. Moreover, applying its collective common knowledge or experience, a jury could find that motorists would have exercised greater care at a crossing point in front of the school, especially at dismissal time when school buses were exiting the driveway, than at the section of the highway beyond the school premises where the sidewalk actually began and Christopher crossed.
 

 There was also evidence that had the sidewalk been extended, it would have likely led to additional safety measures, including the installation of a crosswalk. The School District’s Assistant Superintendent for Business Administration from 1981 until the time of the accident testified that the request for a crosswalk in connection with the sidewalk extension was “automatic.” “[Olbviously, if such a sidewalk were to be constructed, the crosswalk would be part of it.” He also testified that students crossed Westbury Road in a number of different places. When asked “whether or not there would have been a safety benefit to requiring the children to cross at one known location,” he responded, “I think we stressed that, if not directly, but by implication, by asking for a sidewalk. The sidewalk with a crosswalk would have an advantage.” Indeed, the Acting Superintendent of the Wayne County Highway Department testified that “good sound engineering judgment would normally prohibit the construction of a crosswalk across a road * * * unless there was a sidewalk across the street to receive anyone using the crosswalk.”
 

 Thus, plaintiffs evidence could readily support an inference that the absence of safety measures, including the extension of the sidewalk and installation of a crosswalk on Westbury Road,
 
 *675
 
 contributed to the happening of the accident by materially increasing the risk of Christopher being struck while he attempted to cross Westbury Road on his way home from school
 
 (see, Humphrey v State of New York,
 
 90 AD2d 901, 902 [“the negligence of the State was a concurring cause of the accident, greatly increasing the probability of its occurrence”],
 
 affd
 
 60 NY2d 742).
 

 III
 

 Plaintiffs claims against the Town of Wolcott mirror her allegations against the County. Although the accident occurred on a County highway, plaintiff relies upon the fact that the Town had the authority to create a crosswalk and hire a crossing guard
 
 (see,
 
 Vehicle and Traffic Law § 1660 [a] [14]; General Municipal Law § 208-a). Plaintiff has not shown, however, that the Town had a duty to do so.
 

 A municipality will not be held responsible for negligent design or maintenance of a highway it does not own or control
 
 (Ossmer v Bates,
 
 97 AD2d 871, 872;
 
 DiStefano v Donahue,
 
 124 AD2d 322, 323;
 
 Stagnitta v County of Onondaga,
 
 147 AD2d 935, 936;
 
 Silver v Cooper,
 
 199 AD2d 255, 256). “Although sections of the Vehicle and Traffic Law [and General Municipal Law] give towns certain rights with respect to all roads, including County roads, none of the statutes establish an affirmative duty of the Town to maintain any County road”
 
 (Silver v Cooper, supra,
 
 at 256). Here, the Town did not own or control Westbury Road and never assumed any duty to maintain it.
 

 Plaintiffs reliance on
 
 Alexander v Eldred (supra)
 
 is misplaced. While it is true that in that case, we held that the City could be liable for failing to place a stop sign on a private road called Edgecliff Place, the plaintiff was injured because “the taxi entered [the City-owned road called] Stewart Avenue and struck plaintiff’
 
 (id.,
 
 at 464). The City’s engineer admitted that “conditions required one to stop on Edgecliff Place
 
 before proceeding onto Stewart
 
 Avenue”
 
 (id.,
 
 at 466 [emphasis supplied]). Thus, the City’s duty was to install a traffic control or warning device to prevent a mishap on a road owned and controlled by the City. A municipality has no duty to maintain in a reasonably safe condition a road it does not own or control unless it affirmatively undertakes such a duty.
 

 Accordingly, the order of the Appellate Division should be modified by denying the motions for summary judgment of defendant Red Creek Central School District and defendant Wayne County, with costs to plaintiff against said defendants
 
 *676
 
 and, as so modified, affirmed, with costs to defendant Town of Wolcott as against plaintiff.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order modified, etc.