◼ KAREN P. LOCKHART, as Executor of OLGA M. PEROCCHI, Deceased, Respondent, v ADIRONDACK TRANSIT LINES, INC., et al., Appellants, et al., Defendant. [733 NYS2d 533] —Carpinello, J. Appeals (1) from an order of the Supreme Court (Demarest, J.), entered February 15, 2001 in St. Lawrence County, which denied certain defendants' motions for summary judgment dismissing the complaint against them, (2) from an order of said court, entered March 19, 2001 in St. Lawrence County, which denied certain defendants' motion for bifurcation, and (3) from an order of said court, entered March 19, 2001 in St. Lawrence County, which denied certain defendants' motion for a joint trial.

The instant action stems from a December 28, 1998 fatal pedestrian-vehicle accident on East Orvis Street in the Village

of Massena, St. Lawrence County. On that evening, plaintiff's 76-year-old mother (hereinafter decedent) departed a westbound bus owned by defendant Adirondack Transit Lines, Inc. and driven by defendant Charles S. Pona, walked behind the bus to cross the street and was struck by defendant Marc A. Walpole in the center of the eastbound lane. The record specifically reveals that Pona pulled completely off East Orvis Street onto the north shoulder of the road, assisted decedent in getting off the bus and procured her luggage. According to Pona, after decedent denied his request for additional assistance, he got back on the bus, had a brief conversation with another passenger and then pulled back onto East Orvis Street and proceeded with his route. He did not see or hear the accident. According to Walpole, as he was proceeding eastbound on East Orvis Street at the designated 30 mile-per-hour speed limit, he did not see decedent until the moment of impact. She died less than two hours later at a local hospital.

The accident occurred in front of Triple A Taxi and Service Center, a business owned by defendant Timothy Alguire, doing business as Triple A Taxi. The Triple A premises had been a designated agent and bus stop for Adirondack since May 1997; however, a dispute had arisen between Alguire and Adirondack concerning the condition of the driveway which the buses were to utilize resulting in a decision by Adirondack to discharge and pick up passengers on East Orvis Street itself.* Adirondack claims that construction equipment, numerous vehicles and debris on or around the semicircular driveway made it difficult, if not impossible, for its buses to use the driveway and that it complained to Alguire about the problem, to no avail. Thus, according to Adirondack's vice president of safety and risk management, as of late fall 1998, he had advised its drivers not to attempt to drive on Alguire's property and instead pick up and discharge passengers on East Orvis Street itself.

Pona, who was not the regular driver on this particular route,

---

* Alguire runs several businesses from this location, including the taxi service, a bus station for Adirondack and Greyhound Bus Lines, a towing company, a used car lot and a mechanical shop. Previously, Adirondack and Alguire had agreed that Adirondack would use the Triple A premises as a designated bus terminal via a semicircular driveway that went around the Triple A building. The Adirondack buses were to enter the property via a western driveway, circle around the property, pick up and discharge passengers on the east side of the building and exit back onto East Orvis Street from the eastern driveway. Pursuant to their written agreement, Alguire was "to maintain * * * all driveways, walks, approaches and premises appurtenant thereto, in a clean and sanitary and safe condition at all times."

testified at an examination before trial that when he received route instructions approximately two weeks before the accident, another driver explained to him the difficulty of getting in and out of the "Massena terminal." According to Pona, he nevertheless had made one attempt to use the semicircular turnaround approximately two weeks before decedent's accident and "it was just like [the other driver] said," i.e., there were obstructions in the road and when he attempted to go around the corner, the bus slid to the left and nearly plowed into a piece of construction equipment. According to Pona, "that was enough for [him]" and he no longer attempted to use the turnaround while driving the route, including on the day of decedent's accident. Alguire, on the other hand, denies that any vehicles under his control blocked the ability of the buses to drive through and around his premises. According to Alguire, he complained on numerous occasions to Adirondack about its drivers dropping passengers off on East Orvis Street instead of using the turnaround, to no avail, and that he "knew something was going to happen sooner or later."

In this wrongful death action, plaintiff essentially maintains that Adirondack and Pona were negligent in failing to make the scheduled stop on the Triple A premises and in failing to provide decedent with a safe place to embark. As to this latter claim, the record reveals that the vicinity of East Orvis Street where decedent was discharged was a considerably dark commercial area. There was no crosswalk for decedent's use and the nearest intersection from where she was discharged was 100 to 200 feet away. The record further reveals that decedent was wearing dark clothing and was laden with luggage and Christmas packages. With respect to Alguire, plaintiff essentially maintains that he was negligent in permitting construction debris, equipment and supplies to be placed on his property thereby obstructing Adirondack buses from making scheduled stops on the premises and in acquiescing in Adirondack's regular and frequent practice of discharging passengers on the north shoulder of East Orvis Street.

The primary issue on appeal concerns an order of Supreme Court denying Adirondack, Pona and Alguire summary judgment. Upon our review of the record, we are unable to conclude that any of these parties is entitled to summary judgment as a matter of law. To be sure, Adirondack and Pona owed a duty to decedent to stop at a place where she could safely disembark the bus *and* leave the area (*see, Miller v Fernan*, 73 NY2d 844). While Adirondack, Pona and Alguire each contend that this obligation was fulfilled and that decedent's

conduct in crossing the street behind the bus in the path of Walpole's oncoming vehicle was, in any event, an intervening and superceding cause of the accident as a matter of law, we cannot agree under the particular facts of this case. In our view, the poor lighting conditions in the commercial area where she was discharged that evening, decedent's dark attire and burdensome load and the fact that she was not dropped off at a crosswalk, remotely close to an intersection, at a designated street bus stop or within the designated bus terminal on Alguire's premises create a question of fact as to whether she was provided with a reasonably safe place to alight and leave the area (*see, Gross v New York City Tr. Auth.*, 256 AD2d 128, 129; *Eisen v City of New York*, 254 AD2d 134; *Connolly v Rogers*, 195 AD2d 649, 650; *cf., Russell v Niagara Frontier Transp. Auth.*, 234 AD2d 1012, 1012-1013; *Matter of Eisenberg v Village of Mamaroneck*, 137 AD2d 817, 818; *Mooney v Niagara Frontier Tr. Metro Sys.*, 125 AD2d 997, 998).

Moreover, in order to establish that decedent's conduct was an intervening cause totally obviating a finding that any defendant's negligence was a proximate cause of her injury, such act must so attenuate said negligence from her injury that responsibility may not be reasonably attributed to any of them (*see, Gross v New York City Tr. Auth., supra*, at 130). Here, by Alguire's own admission, discharging passengers in the north shoulder of East Orvis Street thereby forcing them to cross the road to access the bus terminal was an accident waiting to happen. Given the designation of the Triple A premises as an Adirondack bus stop, the use of which by Pona on the evening of the accident would have prevented the instant tragedy, we are simply unable to conclude as a matter of law that dismissal on the ground of decedent's alleged intervening conduct is warranted for any defendant.

Furthermore, depending on which defendant the jury credits concerning the condition of Alguire's property, it might reasonably conclude that either Adirondack or Alguire, or both, breached a duty to decedent and that this breach contributed to her accident. It need not be gainsaid that the agreement to discharge passengers on the Triple A premises itself, instead of on the side of the road, was for the benefit of passengers like decedent, thus the agreement is itself evidence that her accident was arguably foreseeable. In short, a jury could infer, as to the issue of proximate cause, that had the semicircular driveway been sufficiently maintained so as to permit buses to enter the premises, decedent would have been discharged on the property and not the street and, therefore, the conduct of

Adirondack and/or Alguire possibly contributed to the happening of the accident (see, *Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 674-675; *Nichter v Hartley*, 192 AD2d 842, 844). As to Alguire's further contention that any negligence on its part simply furnished the condition for the occurrence of decedent's accident and was not one of its causes, we are again unpersuaded, as a jury could reasonably conclude that Alguire's acts indeed " 'put in motion the agency by which the injuries were inflicted' " (*Benaquista v Municipal Hous. Auth.*, 212 AD2d 860, 861, quoting 1 NY PJI 2:70, at 166 [2d ed] [1995 Suppl]).

Finally, we find no abuse of discretion in Supreme Court's denial of a motion to bifurcate the trial of this action between liability and damages or in its denial of motions to join the instant action with a separate action commenced by Walpole against plaintiff, Adirondack, Alguire and Pona in Oswego County.

Mercure, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the orders are affirmed, with costs.