■  Blake E. Frechette, as Administrator of the Estate of Stacey L. Frechette, Deceased, Appellant, v State of New York, Respondent. [13 NYS3d 266]—

Garry, J. Appeal from an order of the Court of Claims (Ferreira, J.), entered October 31, 2013, which granted defendant's motion for summary judgment dismissing the claim.

On February 24, 2007, Stacey L. Frechette (hereinafter decedent) was killed when the vehicle she was operating passed through a patch of windblown snow on a stretch of State Route 9 in the Town of Beekmantown, Clinton County. Decedent's vehicle spun out of control and crossed into the southbound lane where it was struck on the passenger side by an oncoming pick-up truck. Thereafter, claimant, the administrator of decedent's estate, brought this action alleging that defendant was negligent in, among other things, failing to warn motorists of the danger of windblown snow or to take reasonable measures to prevent it from accumulating on the roadway. Following discovery, defendant moved for summary judgment dismissing the claim, which the court granted. Claimant appeals.

Claimant argues that the Court of Claims erred in relying on the storm in progress doctrine in granting defendant's motion for summary judgment. This doctrine provides a landowner with a reasonable period of time following the cessation of a storm in which to remediate dangerous conditions that have resulted (*see Edick v General Elec. Co.*, 98 AD3d 1217, 1220 [2012]). Here, defendant advances the novel argument that the defense—customarily applied in cases involving frozen precipitation—is equally applicable to windblown snow that has accumulated on a public highway during periods of high winds. This Court has not previously addressed whether the storm in progress doctrine may be applied to hazards created solely by wind, nor whether it may be invoked by defendant to modify its "nondelegable duty to maintain its roadways in a reasonably safe condition" (*Harjes v State of New York*, 71 AD3d 1278, 1279 [2010]). Instead, it is a matter of established law that "[t]he pertinent inquiry is whether [defendant] exercised reasonable diligence in maintaining [the roadway] under the prevailing circumstances" (*Freund v State of New York*, 137 AD2d 908, 909 [1988], *lv denied* 72 NY2d 802 [1988]; *see Barrett v State of New York*, 13 AD3d 775, 776 [2004]; *but see Mazzella v City of New York*, 72 AD3d 755, 756 [2010]). Applying this analysis, ongoing adverse conditions do not excuse defendant from its duty to remediate dangerous conditions, but are relevant to the inquiry as to whether it exercised reasonable diligence in doing so (*see e.g. Freund v State of New York*, 137 AD2d at 910). Here, defendant submitted evidence showing

that the snow plow operator assigned to the roadway had made 12 passes through the area in the hours leading up to the accident in an attempt to clear the roadway of windblown snow, with the last pass occurring approximately 30 minutes prior to the accident. Claimant argues that, notwithstanding defendant's "herculean efforts" on the morning of the accident, defendant had received notice of the dangerous recurrent hazard of windblown snow on the roadway well before that date, but nonetheless failed to take reasonable measures to remedy the hazard or warn motorists of the danger.

Defendant may be held liable in negligence where it "failed to diligently remedy [a] dangerous condition[ ] once it was provided with actual or constructive notice or [where] it did not correct or warn of a recurrent dangerous condition of which it had notice" (*Harjes v State of New York*, 71 AD3d at 1279 [internal quotation marks and citation omitted]; *see Hart v State of New York*, 43 AD3d 524, 525 [2007]). "Once [defendant] is made aware of a dangerous traffic condition it must undertake reasonable study thereof with an eye toward alleviating the danger" (*Friedman v State of New York*, 67 NY2d 271, 284 [1986] [citations omitted]). With respect to defendant's notice of the hazardous condition, the evidence showed that in the 10 years preceding the accident, defendant's agents were contacted on several occasions regarding concerns about the safety of Route 9 in the vicinity of the accident. In 1997, the State Police contacted the Department of Transportation (hereinafter DOT) to advise it of concerns regarding the formation of black ice near the scene of the accident. Additionally, in response to a 1999 resolution passed by the Town of Beekmantown, the Beekmantown Town Supervisor sent a letter to DOT requesting that a hill near the accident scene be reconstructed to improve roadway safety in light of the fact that "[t]here ha[d] been several accidents in that vicinity." Claimant further points to the history of snow and ice-related accidents in the vicinity of the crash site as sufficing to provide defendant with constructive notice of a recurrent dangerous condition. The evidence revealed that there had been at least 10 reported accidents along the subject stretch of Route 9 caused by wintry conditions in the 11 years preceding decedent's accident. We agree with defendant that, although this evidence may have established its "general awareness" of hazardous winter conditions on Route 9, it would be, in itself, insufficient to demonstrate notice of the specific hazard of windblown snow (*Hart v State of New York*, 43 AD3d at 525; *see Barrett v State of New York*, 13 AD3d at 776).

However, in addition, claimant submitted the testimony of

two DOT supervisors and the snow plow operator assigned to the subject roadway. All three testified that the area was prone to windblown snow prior to decedent's accident. Most notably, the snow plow operator stated that the problem of windblown snow on the roadway occurred "[e]very time the wind blows, it's in the same spot every year." Claimant also submitted an affidavit from the mother of a child who was killed in a 1997 accident at the same location on Route 9 where decedent's accident occurred. The mother averred that she met with DOT officials in 2003 regarding her concerns about the subject roadway and that she had suggested, among other things, "putting up snow fences to prevent drifting of snow onto the roadway in question" and "[e]nsuring that salt and/or sand was available . . . as it was an area that was known for its propensity for icy, snowy, drifting and blowing snow conditions." One DOT official present at this meeting testified that he knew that the mother wanted to share her concerns about the safety of the roadway, but viewed the meeting as being intended to provide the mother with some comfort. The other official present similarly testified that he "viewed [the meeting] as an airing for the parents." Notably, neither of the officials disputed the mother's sworn statement that she had raised concerns about the hazard posed by windblown snow at the site or that she had suggested that snow fences be considered. Upon review, we conclude that this evidence was sufficient to present factual issues as to defendant's notice of the dangerous recurring condition of windblown snow at the site of the accident (*see Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 672 [1999]; *Slaughter v State of New York*, 238 AD2d 770, 771-772 [1997]).

We further hold that, viewing the evidence in the light most favorable to claimant, an issue of fact exists with respect to whether defendant's actions in seeking to remedy the recurring hazard of windblown snow by relying solely on plowing were reasonable. Claimant proffered the affidavit and report of a licensed engineer and land surveyor who, after reviewing DOT guidelines, opined that, rather than relying only on plowing and salting, the conditions at the site called for the installation of a snow fence that "could have mitigated—if not prevented—[the] accident." Additionally, the snow plow operator assigned to the roadway indicated that, despite his best efforts, he was unable to keep the roadway clear of drifting snow on the day of the accident; on prior occasions, he had been forced to request help from other snow plow operators because he was unable to complete his assigned route before more windblown snow would cover the roadway. While defendant's expert disagreed with

claimant's expert and opined that DOT guidelines did not call for the installation of a snow fence, these differing opinions presented a credibility issue to be resolved at trial (*see O'Brien v Couch*, 124 AD3d 975, 977 [2015]).

Finally, we agree with the Court of Claims that defendant failed to show that it was entitled to summary judgment on the basis of qualified immunity.[1] When defendant undertakes a "stud[y] [of] a dangerous condition and determines as part of a reasonable plan of governmental services that certain steps need not be taken, that decision may not form the basis of liability" (*Friedman v State of New York*, 67 NY2d at 286; *see Martin v State of New York*, 305 AD2d 784, 784 [2003], *lv denied* 100 NY2d 512 [2003]). Although defendant contends that its decision not to utilize a snow fence or other measures intended to mitigate the hazard of windblown snow resulted from a "reasoned plan or study," the record is inadequate to demonstrate, as a matter of law, that such a study was undertaken (*Winney v County of Saratoga*, 8 AD3d 944, 945 [2004] [internal quotation marks and citation omitted]). In support of its contention, defendant submitted, among other things, the testimony of the Director of Regional Planning and Program Development. He averred that, following the meeting between DOT officials and the mother of the other accident victim, he and another DOT official visited the subject roadway for approximately 30 minutes. The two men walked up and down the roadway and thereafter concluded that "there was nothing that jumped out at [them] as an obvious task that [they] could do to try to make something better there."[2] When questioned as to whether the installation of a snow fence was contemplated in order to reduce windblown snow, he offered numerous justifications as to why a snow fence would not have been favored, but further stated that "it wasn't a blowing snow issue. I was looking for black ice, that's what we were concerned with." Similarly, evidence that a sign warning of icy pavement was installed in 1997 and that an employee was sent to the roadway to inventory road signs in 2005 also failed to show that any

---

1. Although ultimately granting defendant the full relief sought, the Court of Claims rejected this argument; thus, defendant is not now foreclosed from seeking our review of this alleged error, as it "has been properly preserved and would, if corrected, support a judgment in [its] favor" (*Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 546 [1983]; *see Matter of Seney v Board of Educ. of the E. Greenbush Cent. Sch. Dist.*, 103 AD3d 1022, 1022 n 1 [2013]).

2. Notably, this visit took place when the weather was "nice out" rather than under conditions when it would have been possible to observe the hazard posed by windblown snow.

deliberation actually occurred regarding the specific hazard posed by windblown snow. Thus, given the lack of evidence that defendant " 'passed on the very same question of risk,' " it was not entitled to summary judgment on the basis of qualified immunity (*Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 673 [1999], quoting *Weiss v Fote*, 7 NY2d 579, 588 [1960] [emphasis omitted]; *see Turturro v City of New York*, 127 AD3d 732, 737 [2015]).

Peters, P.J., Egan Jr. and Lynch, JJ., concur. Ordered that the order is reversed, on the law, with costs, and motion denied.