■ JENNY WILSON DIAZ et al., Appellants, v BRENTWOOD UNION FREE SCHOOL DISTRICT, Respondent, et al., Defendants. [36 NYS3d 161]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Suf-

folk County (Baisley, Jr., J.), dated May 12, 2014, which granted the motion of the defendant Brentwood Union Free School District for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

On July 14, 2009, at approximately 11:00 a.m., the plaintiff Shaquille Wilson (hereinafter the plaintiff), then 16 years old, allegedly sustained injuries when he was assaulted by members of a gang after being dismissed from summer school at Brentwood High School. The plaintiff, and his mother suing derivatively, commenced this action, inter alia, to recover damages for personal injuries against the defendant Brentwood Union Free School District (hereinafter the defendant), among others.

The defendant moved for summary judgment dismissing the complaint submitting, among other things, the plaintiff's testimony from both the hearing held pursuant to General Municipal Law § 50-h and his deposition. The plaintiff testified at his deposition that, prior to the assault, he was leaving the school at dismissal time along with "[h]undreds" of kids, and that the school security guards were directing the students to leave the property. The plaintiff intended to walk to a restaurant with his friends to get something to eat. Prior to leaving the school grounds, the plaintiff noticed a group of six young men, whom the plaintiff thought were gang members, walking down the street toward the school, yelling "[w]here's the Bloods around here?" At the General Municipal Law § 50-h hearing, the plaintiff testified that he "didn't feel threatened" when he saw the group because he was not a member of a gang, "so [he] didn't think they would mess with [him]." The plaintiff further testified that, while his friends stopped to converse with other students, he continued walking and was assaulted by the six young men after he left the school grounds. At his deposition, the plaintiff testified that, prior to the assault, he had attempted to return to the school campus, but the security guards prevented him from doing so. In the order appealed from, the Supreme Court granted the defendant's motion.

"A school is not an insurer of the safety of its students, and the duty owed to its students 'is co-extensive with the school's physical custody and control over them' " (*Maldonado v Tuckahoe Union Free School Dist.*, 30 AD3d 567, 568 [2006], quoting *Morning v Riverhead Cent. School Dist.*, 27 AD3d 435, 436 [2006]; *see Tarnaras v Farmingdale School Dist.*, 264 AD2d 391, 392 [1999]). "A school's custodial duty ceases once the student has passed out of its orbit of authority and the parent

is perfectly free to reassume control over the child's protection" (*Vernali v Harrison Cent. School Dist.*, 51 AD3d 782, 783 [2008]; *see Pratt v Robinson*, 39 NY2d 554, 560 [1976]). Thus, a school generally cannot be held liable for injuries that occur off school property and beyond the orbit of its authority (*see Vernali v Harrison Cent. School Dist.*, 51 AD3d at 783; *Stagg v City of New York*, 39 AD3d 533, 534 [2007]; *Bertrand v Board of Educ. of City of N.Y.*, 272 AD2d 355 [2000]; *Tarnaras v Farmingdale School Dist.*, 264 AD2d at 392; *cf. Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 672 [1999]).

Here, the defendant established its prima facie entitlement to judgment as a matter of law by demonstrating that the assault occurred at a time when the plaintiff was not on school property and no longer in the defendant's custody or under its control and was, thus, outside of the orbit of its authority (*see Pistolese v William Floyd Union Free Dist.*, 69 AD3d 825, 827 [2010]; *Vernali v Harrison Cent. School Dist.*, 51 AD3d at 783; *Stagg v City of New York*, 39 AD3d at 534). The defendant also demonstrated, prima facie, that the plaintiff was not released into a foreseeably hazardous setting that the defendant had a hand in creating (*cf. Ernest v Red Cr. Cent. School Dist.*, 93 NY2d at 672).

We disagree with our dissenting colleague's position that the defendant failed to establish that it provided adequate supervision, and that it was necessary for the defendant to submit affidavits from the school security guards in order to satisfy its initial burden. The plaintiff's own testimony from the General Municipal Law § 50-h hearing, which the defendant submitted in support of its motion, reflects that the plaintiff did not feel threatened by the gang members and that he decided to leave school grounds. Schools "cannot reasonably be expected to continuously supervise and control all movements and activities of students" (*Mirand v City of New York*, 84 NY2d 44, 49 [1994]; *see Goldschmidt v City of New York*, 123 AD3d 1087, 1087 [2014]; *Nash v Port Wash. Union Free School Dist.*, 83 AD3d 136, 146 [2011]). The defendant demonstrated that the plaintiff departed safely from school premises prior to the assault. Once the plaintiff left school premises, the defendant had no duty to supervise him off school premises after dismissal from school (*see Johnson v Rochester City Sch. Dist.*, 101 AD3d 1641, 1642 [2012]; *Chalen v Glen Cove School Dist.*, 29 AD3d 508, 509 [2006]). Furthermore, the defendant established that it assumed no affirmative duty to protect the plaintiff outside of school premises (*see Maldonado v Tuckahoe Union Free School Dist.*, 30 AD3d at 568).

In opposition to the defendant's prima facie showing, the plaintiffs failed to raise a triable issue of fact. The plaintiff's affidavit submitted in opposition to the motion merely raised what clearly appear to be feigned issues of fact designed to avoid the consequences of his earlier deposition testimony and his General Municipal Law § 50-h hearing testimony, and thus, was insufficient to defeat the defendant's motion (*see Bluth v Bias Yaakov Academy for Girls*, 123 AD3d 866, 866 [2014]; *Cuebas v City of Yonkers*, 97 AD3d 779, 780 [2012]).

Accordingly, the Supreme Court properly granted the defendant's motion for summary judgment dismissing the complaint. Eng, P.J., Chambers and Roman, JJ., concur.

Barros, J., dissents, and votes to reverse the order, on the law, and deny the motion of the defendant Brentwood Union Free School District for summary judgment dismissing the complaint, with the following memorandum: "[T]he prima facie showing which a defendant must make on a motion for summary judgment is governed by the allegations of liability made by the plaintiff in the pleadings" (*Foster v Herbert Slepoy Corp.*, 76 AD3d 210, 214 [2010]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320, 325 [1986]; *Miller v Village of E. Hampton*, 98 AD3d 1007, 1008 [2012]; *Braver v Village of Cedarhurst*, 94 AD3d 933, 934 [2012]). In their complaint and verified bill of particulars, the plaintiffs allege that despite the notice that the defendant Brentwood Union Free School District (hereinafter the defendant) had of the presence of gang members directly outside of the high school of the plaintiff Shaquille Wilson (hereinafter the infant plaintiff), the defendant negligently supervised him by "directing [him] to proceed down a street where a dangerous gang was present and into the hands of said gang members." The gang members stabbed the infant plaintiff in the shoulder, and struck him multiple times in the head with an object, causing him to sustain severe injuries to his brain, left shoulder, and right arm.

In support of its motion for summary judgment dismissing the complaint, the defendant submitted, among other things, the infant plaintiff's deposition testimony, as well as his General Municipal Law § 50-h hearing testimony in which he testified that, as he was leaving the school premises, he told the school's security officers, who were stationed at sawhorse barricades outside the school, that gang members were present. The infant plaintiff observed the gang members park a car a block away from the school, and saw six of the gang members approaching the students while loudly screaming, "Where are the Bloods?" The infant plaintiff testified that the security offi-

cers responded that they "don't care" about the presence of the gang members, and continued to direct the students off the premises and toward the gang members. Prior to being assaulted, the infant plaintiff requested, and was denied, permission by the security officers to reenter the school premises. The infant plaintiff testified that he was attacked 10 feet away from the school premises in the vicinity of the barricades.

"Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (*Mirand v City of New York*, 84 NY2d 44, 49 [1994]). The standard for determining whether the school has breached its duty is to compare the school's supervision and protection to that of a parent of ordinary prudence placed in the same situation and armed with the same information (*see David v County of Suffolk*, 1 NY3d 525, 526 [2003]; *Kelly G. v Board of Educ. of City of Yonkers*, 99 AD3d 756, 758 [2012]). The adequacy of a school's supervision of its students is generally a question left to the trier of fact to resolve, as is the question of whether inadequate supervision was the proximate cause of the plaintiff's injury (*see DiGiacomo v Town of Babylon*, 124 AD3d 828, 829 [2015]; *Osmanzai v Sports & Arts in Schools Found., Inc.*, 116 AD3d 937, 938 [2014]; *Palmer v City of New York*, 109 AD3d 526, 527 [2013]; *Braunstein v Half Hollow Hills Cent. Sch. Dist.*, 104 AD3d 893, 894 [2013]).

Here, the defendant failed to make a prima facie showing of the absence of a triable issue of fact as to whether it provided adequate supervision, and whether inadequate supervision was a proximate cause of the infant plaintiff's injuries. Notably, the defendant did not even submit the deposition testimony or affidavit of any of the security officers stationed at the barricades to rebut the infant plaintiff's allegations.

Contrary to the determination of my colleagues in the majority, the fact that an assault occurs outside the school gate does not relieve the school of its duty to provide adequate supervision to students as they are leaving the school premises, nor is it a license for school personnel to knowingly direct students off the school premises in the face of an immediate risk of harm. While "[a] school's custodial duty ceases once the student has passed out of its orbit of authority" (*Vernali v Harrison Cent. School Dist.*, 51 AD3d 782, 783 [2008]; *see Pratt v Robinson*, 39 NY2d 554, 560 [1976]), here, the plaintiffs allege that the defendant's negligence, i.e., directing the infant plaintiff off the school premises toward gang members shouting threats, occurred while the infant plaintiff was still within the defendant's "orbit of authority."

Also, contrary to the majority's determination, whether the infant plaintiff failed to sufficiently perceive the danger of harm to himself from the gang members' threats has no bearing on the relevant inquiries, i.e., whether the school provided adequate supervision and whether the harm to the infant plaintiff was a reasonably foreseeable consequence of inadequate supervision.

The Supreme Court erred in resolving issues of credibility against the infant plaintiff. "The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist" (*Stukas v Streiter*, 83 AD3d 18, 23 [2011], quoting *Kolivas v Kirchoff*, 14 AD3d 493, 493 [2005]). Any inconsistencies within the infant plaintiff's testimony merely presented credibility issues for trial (*see Mejia v Kennedy*, 124 AD3d 731, 732 [2015]; *Knepka v Tallman*, 278 AD2d 811 [2000]).

Since the defendant failed to meet its prima facie burden, the Supreme Court had no occasion to consider whether the infant plaintiff's affidavit in opposition raised only feigned issues of fact (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Accordingly, I vote to reverse the order, and deny the defendant's motion for summary judgment dismissing the complaint.