[781 NYS2d 342]

SHEILA C., an Infant, by Her Grandmother and Legal Guardian, SHEILA DOE, Respondent-Appellant, v MAURY POVICH et al., Appellants-Respondents.

First Department, August 26, 2004

## APPEARANCES OF COUNSEL

*Covington & Burling*, Washington, D.C. (*Lanny A. Breuer* and *Mark P. Gimbel* of counsel), for appellants-respondents.

*Rand Rosenzweig Smith Radley Gordon & Burstein, LLP*, New York City (*Alexander Stotland* and *Robert A. Burstein* of

counsel), and *Law Office of David M. Blum*, New York City (*David M. Blum* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

NARDELLI, J.P.

In this appeal we are asked to determine, inter alia, whether defendants, a nationally syndicated talk-show program, various television studios, and their alleged employees, both identified and unidentified, owed a duty to plaintiff, a minor who was to appear on a segment of the show with the theme out-of-control teens, at the time of a claimed sexual assault.

## Procedural Posture

This matter comes before us in the context of a motion by defendants to dismiss the complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7). It is well established that in determining whether to grant such a motion, the pleading is to be afforded a liberal construction (CPLR 3026) and the court should accept as true the facts alleged in the complaint, accord plaintiff the benefit of every possible inference, and only determine whether the facts, as alleged, fit within any discernible legal theory (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *CBS Corp. v Dumsday*, 268 AD2d 350, 352 [2000]). Stated another way, "[t]he motion must be denied if from the pleadings' four corners 'factual allegations are discerned which taken together manifest any cause of action cognizable at law'" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002], quoting *Polonetsky v Better Homes Depot, Inc.*, 97 NY2d 46, 54 [2001]; *see also Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 120-121 [2002], *lv denied* 99 NY2d 502 [2002]).

## Plaintiff's Allegations

Plaintiff, at the time of the incidents referred to herein, was a 14-year-old girl residing in Texas. The named defendants include Maury Povich, The Maury Povich Show (the Show), Polly Corman and Todd Kemmer, both of whom were employees of the Show, and John Does "1" through "9."

The complaint asserts that in December 2001, in response to a televised solicitation for guests aired during the Show, plaintiff's mother contacted the Show by telephone and explained that she was the mother of an "out-of-control" teen, specifically, plaintiff. Plaintiff's mother was promised that in exchange for her appearance on the Show, plaintiff would receive

various follow-up treatment and assistance, including psychological and emotional counseling and a corrective "teen boot camp."

A number of telephone conversations between plaintiff, plaintiff's mother and the Show's staff ensued and, during one such call, the Show's employees were alerted that plaintiff was receiving medication for emotional illness, had recently lost a close, immediate family member, and had attempted suicide. Moreover, during a private conversation with defendant Kemmer, plaintiff allegedly revealed her somewhat extensive sexual history, which included sexual relations with five boys under the age of 16 and a 29-year-old man. Kemmer purportedly encouraged plaintiff to bring sexually provocative clothing to the taping and to act in a sexually provocative manner.

Plaintiff, her mother and her grandmother, the latter of whom was her legal guardian, were thereafter flown to New York by the Show and transported, by limousine, to the Pennsylvania Hotel in Manhattan, where they were provided a room. The complaint states that in preparation for, and during the taping of the Show, plaintiff was separated from her mother and grandmother, who were assured by staff that the plaintiff would be supervised and cared for. Plaintiff avers that she was subsequently introduced to defendant Corman, whom the Show represented as a "counselor," but who apparently was a producer of the Show. Corman, and other employees, just prior to the taping, allegedly urged plaintiff to act provocatively and to wear only the top of her pantsuit, which was long enough to cover her upper thighs, so as to appear "sexier," which "would be better for the show."

Plaintiff contends that during the taping of the program, while still separated from her mother and grandmother, she was taken to an area under the exclusive control of the Show, where she watched as other guests were filmed. It was at that time, in that area, that she was approached by an individual who represented himself as "Maury's Limo Driver" (the driver). The driver allegedly exchanged "familiar greetings" with employees of the Show and was invited to remain in the restricted area. The driver thereafter is said to have complimented plaintiff on her good looks and sexuality, solicited and received her contact information in New York, and offered to "show her around town at night." Plaintiff's mother, however, had arrived at some point during the conversation between plaintiff and the driver, witnessed the exchange and expressed concern to employees of

the Show, who assured her not to worry and that everything was under control.

Plaintiff thereafter returned to the Pennsylvania Hotel with her mother and grandmother and, at some unspecified time later that night, the driver called plaintiff a number of times, but was turned away by the mother and the grandmother. Plaintiff, however, managed to sneak out of the hotel room without her mother and grandmother, after which the driver allegedly picked her up in a limousine, drove her to a dark, secluded area, and raped her.

### The Procedural History

Plaintiff commenced this action by the service of a summons and complaint in July 2002 and interposed five causes of action: negligent infliction of emotional distress; negligent hiring and retention; negligence; negligence per se; and slander per se. Defendants, after receiving an extension of time to answer, instead moved to dismiss the complaint for failure to state a cause of action, pursuant to CPLR 3211 (a) (7), and, additionally, for failure to plead the slander claim with the requisite particularity, pursuant to CPLR 3016 (a). Plaintiff cross-moved to amend the complaint, pursuant to CPLR 3025 (b), in the event the court found the pleading deficient in any manner.

The motion court, by decision and order entered November 14, 2003, granted defendants' motion to the extent of dismissing the negligent infliction of emotional distress, negligence per se and slander per se causes of action, and granted plaintiff's cross motion to the extent of permitting plaintiff, if so advised, to replead the slander claim. Defendants now appeal from so much of the motion court's order that denied their motion to dismiss the causes of action for negligence and negligent hiring and retention, and plaintiff cross-appeals to the extent that her claims for negligent infliction of emotional distress and negligence per se were dismissed. Neither plaintiff, nor defendants, challenge the motion court's dismissal, with leave to replead, of the slander per se claim.

### Discussion

#### Negligence

Plaintiff's complaint asserts that defendants undertook to ensure that plaintiff was cared for and supervised and, in doing so, placed themselves in loco parentis, assuming "a duty to see

to the safety and well being of the minor in their custody and care." Defendants, on the other hand, maintain that at the time of the alleged attack, plaintiff had been released to the custody of her mother and grandmother and, as a result, no duty of care was owed to the minor at that time. The motion court, in sustaining the negligence cause of action, reasoned that a nonparent may be held responsible for the negligent supervision of a child when the nonparent undertakes the care and supervision of a child, the child is injured, and such injuries are reasonably foreseeable and related to the absence of adequate supervision. The motion court went on to hold, inter alia, that: although the Show's personnel were not directly supervising plaintiff at the time of the incident, the conditions created by the Show were in effect at the time of the assault; any contributory negligence on the part of plaintiff's mother and grandmother did not serve to defeat the minor's claim; and the intervening, intentional act of the alleged rapist does not offer defendants a safe harbor, as the proper inquiry is whether deficient supervision was a substantial contributing factor to the harm caused by a third party.

The threshold question in any negligence action is whether the alleged tortfeasor owes a duty of care to the injured party (*Espinal v Melville Snow Contrs., Inc.*, 98 NY2d 136, 138 [2002]; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]), and the existence and scope of that duty is a legal question for the courts to determine (*532 Madison Ave. Gourmet Foods, Inc. v Finlandia Ctr., Inc.*, 96 NY2d 280, 288 [2001]; *Echorst v Kaim*, 288 AD2d 595, 596 [2001]). Indeed, "[i]n the absence of duty, there is no breach and without a breach there is no liability" (*Pulka v Edelman*, 40 NY2d 781, 782 [1976]; *Dugue v 1818 Newkirk Mgt. Corp.*, 301 AD2d 561, 562 [2003]; *Petito v Verrazano Contr. Co., Inc.*, 283 AD2d 472, 474 [2001]), or, as former Chief Judge Cardozo once noted, " '[p]roof of negligence in the air, so to speak, will not do' " (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 341 [1928], quoting Pollock, Torts, at 455 [11th ed]). Moreover, foreseeability, a point raised by plaintiff, generally presents a factual question and does not determine the existence of duty, but, rather, the scope of that duty once it is determined to exist (*Eiseman v State of New York*, 70 NY2d 175, 187 [1987]; *Pulka v Edelman*, 40 NY2d at 785; *Petrosky v Brasner*, 279 AD2d 75, 78 [2001], *lv denied* 96 NY2d 711 [2001]; *see also Lauer v City of New York*, 95 NY2d 95, 100 [2000] ["(w)ithout a duty running directly to the injured person there

can be no liability in damages, however careless the conduct or foreseeable the harm"]).

In fixing the orbit of duty, an often difficult task, the courts must bear in mind the precedential and consequential effects of their rulings (*Hamilton v Beretta U.S.A. Corp., supra* at 232; *Lauer v City of New York*, 95 NY2d at 100) and "limit the legal consequences of wrongs to a controllable degree" (*Tobin v Grossman*, 24 NY2d 609, 619 [1969]; *see also Strauss v Belle Realty Co.*, 65 NY2d 399, 402 [1985]). The boundaries of the orbit, however, are myriad, fluid, guided by public policy, and present no clear, bright line by which the courts may be guided. In *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579 [1994]), the Court of Appeals observed that:

> "Common-law experience teaches that duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility. These sources contribute to pinpointing and apportioning of societal risks and to an allocation of burdens of loss and reparation on a fair, prudent basis . . ." (*id.* at 585; *see also De Angelis v Lutheran Med. Ctr.*, 58 NY2d 1053, 1055 [1983] ["not only logic and science, but policy play an important role"]).

The Court in *Palka* went on to opine that courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d at 586; *see also Hamilton v Beretta U.S.A. Corp.*, 96 NY2d at 232; *532 Madison Ave. Gourmet Foods, Inc. v Finlandia Ctr., Inc.*, 96 NY2d at 288; Prosser and Keeton, Torts § 53, at 357-359 [5th ed]).

Mindful of the foregoing general precepts and guidelines, we now move to the more specific question of whether a temporary custodian has a continuing duty to protect a child from harm once that child has been returned to the custody of a parent or guardian or, as in this case, both a parent and a guardian. In *Pratt v Robinson* (39 NY2d 554 [1976]), the Court of Appeals considered whether a school district should be held liable for

injuries sustained by a seven-year-old student who, after alighting from a school bus and crossing two streets without misadventure, was struck by a truck while crossing a third street on the way to her home. The Court in *Pratt*, in agreeing with the Appellate Division that the negligence claim should be dismissed, reasoned that "[t]he duty owed by a school to its students . . . stems from the fact of its physical custody over them . . . . The school's duty is thus coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases" (*id.* at 560; *see generally* Restatement [Second] of Torts § 320, Comment *b*).

Since the Court of Appeals rendered its decision in *Pratt* almost 30 years ago, numerous negligent supervision cases, involving various nonparent custodians, have reaffirmed that holding (*see e.g. Marcano v City of New York*, 305 AD2d 223 [2003] [Board of Education was no longer under a duty to supervise plaintiff at the time and place of assault, as he was off school premises and no longer in defendant's custody]; *Bertrand v Board of Educ. of City of N.Y.*, 272 AD2d 355 [2000], *lv denied* 95 NY2d 760 [2000] [no duty to protect child from attack which occurred off school premises as the school's duty to protect the child from the negligence of a third party ceases once the child passes out of its physical custody and control in such a way that the parent is free to reassume control over the child's protection]; *Winter v Board of Educ. of City of N.Y.*, 270 AD2d 343 [2000], *lv denied* 95 NY2d 755 [2000] [no duty to elementary school student slashed in the face with a razor just outside school building after dismissal, as infant plaintiff was no longer within the school's custody and control]; *Ruiz v Life Skills School, Ltd.*, 267 AD2d 182 [1999] [school owed no duty of care to infant plaintiff injured in rollerskating accident as the incident did not occur on school property and after custody and control had passed from the school authorities to the infant plaintiff's mother]; *Harker v Rochester City School Dist.*, 241 AD2d 937 [1997], *lv denied* 90 NY2d 811 [1997] [no duty imposed on school district or bus company once plaintiff disembarked from the school bus, where infant plaintiff was cut in the face with a razor by another student who had also been on the bus and who the bus driver had observed calling the plaintiff names and striking her]; *Berlin v Nassau County*

*Council, Boy Scouts of Am.*, 229 AD2d 414 [1996], *lv denied* 89 NY2d 806 [1997] [scout master had no duty to supervise or control child once the child was returned to the custody of his parents]; *Colon v Board of Educ. of City of N.Y.*, 156 AD2d 131 [1989], *lv denied* 75 NY2d 708 [1990] [Board of Education's duty to students arises from its physical custody over them, and that custodial duty ceases once the parent is "free to reassume control" over the child]).

In the matter before us, plaintiff concedes not only that she was no longer in defendants' custody at the time of the alleged assault, the taping having ended hours earlier, but that her mother and her legal guardian had resumed control over her and were supervising her, in their hotel room, at the time the driver initially made his attempt to contact plaintiff, and when plaintiff later absconded from her guardians. Yet, plaintiff argues that defendants, who were not in the hotel room and, in fact, had no discernible right to be there, had the duty to prevent her from "sneaking" away with an unidentified third party. Carried to its logical conclusion, the expanded orbit of duty urged by plaintiff would have required defendants to not only return her safely to her guardians, but to then continue to monitor the adequacy of the supervision provided by her guardians and, perhaps, to provide round-the-clock surveillance. It is also unclear if the duty plaintiff seeks to impose on defendants would terminate at the airport, once plaintiff was home in Texas, or at some later date.

Plaintiff's, as well as the motion court's reliance on *Ernest v Red Cr. Cent. School Dist.* (93 NY2d 664 [1999]) is unavailing. In *Ernest*, the infant plaintiff was struck by a truck as he crossed a highway, adjacent to his elementary school, which had no sidewalk, forcing the students to walk along, and cross from, the highway's shoulder. The Court in *Ernest* declined to dismiss the complaint, finding that the defendant had a continuing duty to supervise a child if the defendant released the child, "without further supervision" (*id.* at 672), into a foreseeably hazardous setting. Here, plaintiff was not released without further supervision, but directly into the custody and supervision of her mother and grandmother, into a situation which was not foreseeably hazardous, or in any way presented an immediate risk to her safety.

Plaintiff also places somewhat heavy, although questionable reliance on *Brown v New Commodore Cruise Line Ltd.* (2000 WL 45443, 2000 US Dist LEXIS 536 [SD NY, Jan. 19, 2000]), an

unpublished decision which involved a passenger who was injured while jumping into a swimming pool from the upper deck of a cruise ship. The ship's crew members, officers, waiters, waitresses and bartenders were allegedly encouraging plaintiff to jump. The court in *Brown* found that the defendant had a duty to supervise passengers in the pool, but it is hardly analogous to the within matter as the accident in *Brown* took place on defendant's property, in the presence, and with the encouragement, of the defendant's employees. Plaintiff herein was not on defendants' property, was in the custody and care of her guardians, and was not encouraged by defendants to rendezvous with the alleged perpetrator.

In sum, the circumstances of this case do not warrant a finding that the incident which allegedly befell plaintiff falls within the defendants' orbit of duty. We reach this conclusion after considering the relevant factors delineated above, and note that to expand the duty of care here to encompass plaintiff, who had left defendants' physical custody and control and was returned to the supervision of her guardians, would place individuals that provide temporary care and supervision to minors at grave risk to a prohibitive number of lawsuits and concomitant liability. Accordingly, plaintiff's cause of action sounding in negligence should have been dismissed.

### Negligent Hiring and Retention

■ In those instances where an employer cannot be held vicariously liable for torts committed by its employee, the employer can still be held liable under theories of negligent hiring and negligent retention (*Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 161 [1997], *lv dismissed* 91 NY2d 848 [1997], *cert denied* 522 US 967 [1997]; Restatement [Second] of Torts § 317; *see also Hall v Smathers*, 240 NY 486 [1925]). The negligence of the employer in such a case is direct, not vicarious, and arises from its having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee (*see Detone v Bullit Courier Serv., Inc.*, 140 AD2d 278, 279 [1988], *lv denied* 73 NY2d 702 [1988]; *see also Rodriguez v United Transp. Co.*, 246 AD2d 178, 180 [1998]).

An essential element of a cause of action for negligent hiring and retention is that the employer knew, or should have known,

of the employee's propensity for the sort of conduct which caused the injury (*Gomez v City of New York*, 304 AD2d 374 [2003]; *Bellere v Gerics*, 304 AD2d 687, 688 [2003]; *Yeboah v Snapple, Inc.*, 286 AD2d 204, 205 [2001]). Plaintiff's complaint, however, is devoid of any allegations concerning this essential element, or the identity of the employees involved, and, in the face of defendants' motion to dismiss the complaint, plaintiff opted not to make any additional submissions to cure these deficiencies (*see Rovello v Orofino Realty Co., Inc.*, 40 NY2d 633, 635 [1976]; *Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 246 AD2d 457 [1998]), or to establish that additional discovery was necessary (CPLR 3211 [d]; *Lancaster v Colonial Motor Frgt. Line, Inc.*, 177 AD2d 152, 155 [1992]). Accordingly, plaintiff's cause of action under the theory of negligent hiring and retention should also have been dismissed.

### Negligent Infliction of Emotional Distress

Plaintiff's first cause of action, as correctly noted by the motion court, sets forth mixed allegations of negligent and intentional infliction of emotional distress. These claims center around assertions that defendants introduced plaintiff to her alleged assailant and had encouraged her to act promiscuously and disobey her guardians during the recording of the Show.

The tort of intentional infliction of emotional distress is a departure from the common law and has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not (*see Howell v New York Post Co.*, 81 NY2d 115, 119-122 [1993]; *McIntyre v Manhattan Ford, Lincoln-Mercury, Inc.*, 256 AD2d 269, 270 [1998], *appeal dismissed* 93 NY2d 919 [1999], *lv denied* 94 NY2d 753 [1999]). A cause of action for negligent infliction of emotional distress, which no longer requires physical injury as a necessary element, generally must be premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety (*see E.B. v Liberation Publs., Inc.*, 7 AD3d 566 [2004]; *Johnson v New York City Bd. of Educ.*, 270 AD2d 310, 312 [2000]).

Moreover, a cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by the defendants " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983],[1] quoting Restatement [Second] of Torts § 46, Comment *d*; *see also Dillon v City of New York*, 261 AD2d 34, 41 [1999]; *Acquista v New York Life Ins. Co.*, 285 AD2d 73, 83 [2001]). Such extreme and outrageous conduct must be clearly alleged in order for the complaint to survive a motion to dismiss (*Dillon v City of New York, supra* at 41).

In this matter, plaintiff's allegations that defendants suggested she act provocatively, and allowed her to be introduced to a purported rapist, with whom she had a later, voluntary meeting, well after she was no longer in the physical custody of defendants, simply do not rise to the level of conduct necessary to sustain either cause of action. As a result, we find the motion court properly dismissed this claim.

### Negligence Per Se

In *Elliott v City of New York* (95 NY2d 730 [2001]), the Court of Appeals reaffirmed a long-standing rule that the "violation of a State statute *that imposes a specific duty* constitutes negligence per se, or may even create absolute liability" (*id.* at 734 [emphasis added]; *see also Santana v Seagrave Fire Apparatus Corp.*, 305 AD2d 395, 399 [2003], *lv denied* 1 NY3d 502 [2003]). Plaintiff herein premises this cause of action on Penal Law § 260.10 (1), which provides:

> "A person is guilty of endangering the welfare of a child when: . . . He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health."

The statute, however, rather than imposing a specific duty or rule of conduct, is "broadly written," does not require "that the conduct be specifically directed at a child," and "does not require a particular outcome or actions aimed at a specific individual; the crime is solely defined by the risk of injury produced by defendant's conduct" (*People v Johnson*, 95 NY2d 368, 372 [2000]). Because the statute sets forth a general, abstract stan-

---

1. The Court of Appeals in *Murphy v American Home Prods. Corp.* (58 NY2d 293, 303 [1983]) noted that it had previously adopted the standard set forth in the Restatement in *Fischer v Maloney* (43 NY2d 553, 557 [1978]).

dard prohibiting individuals from knowingly engaging in acts likely to be injurious to the physical, mental or moral welfare of a minor, without specifically defining those acts, it cannot support a claim for negligence per se.[2]

Plaintiff's argument that the statute is sufficiently specific to support a negligence per se claim because courts have rejected challenges by criminal defendants that it is unconstitutionally vague (*see People v Padmore*, 221 AD2d 663 [1995], *lv denied* 87 NY2d 1023 [1996]) is irrelevant, as the issue of whether a criminal law is so vague as to be unconstitutional turns on different factors than the issue of whether the law defines prohibited conduct in a manner specific enough to give rise to a claim of negligence per se. As a result, we find that the motion court properly dismissed plaintiff's negligence per se cause of action.

Accordingly, the order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered November 14, 2003, which, insofar as appealed from, granted defendants' motion to dismiss the complaint, pursuant to CPLR 3211 (a) (7), to the extent of dismissing plaintiff's causes of action for infliction of emotional distress and negligence per se, and denied the motion with respect to plaintiff's claims for negligence and negligent hiring and retention, should be modified, on the law, the causes of action for negligence and negligent hiring and retention dismissed, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

SULLIVAN, WILLIAMS, FRIEDMAN and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered November 14, 2003, modified, on the law, the causes of action for negligence and negligent hiring and retention dismissed, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

---

**2.** Examples of cases in which the conduct prohibited by a particular statute was found sufficiently specific to support a negligence per se claim include: *Ciatto v Lieberman* (266 AD2d 494 [1999]), failure to yield right of way to vehicle approaching from opposite direction when making a left turn, in violation of Vehicle and Traffic Law § 1141, constitutes negligence per se; *Dalal v City of New York* (262 AD2d 596 [1999]), failure to wear corrective lenses, when such a restriction is delineated on the operator's license, in violation of Vehicle and Traffic Law § 509 (3), constitutes negligence per se; *Cordero v City of New York* (112 AD2d 914 [1985]), operating a motor vehicle while under the influence of alcohol, in violation of Vehicle and Traffic Law § 1192, constitutes negligence per se.