**Linwood LEE, Plaintiff,**

v.

**Police Officer Edward McCUE, Sgt. Mario Manganiello, and the City of Mount Vernon, Defendants.**

**No. 04 CIV. 6077(CM)GAY.**

United States District Court, S.D. New York.

Jan. 20, 2006.

Robert W. Folchetti, Klein & Folchetti, White Plains, NY, for Plaintiff.

Nichelle Aniece Johnson, City of Mount Vernon, Dept. of Law, Mount Vernon, NY, for Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE PENDING MOTIONS FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

This action stems from an encounter between several Mount Vernon police officers, including Sergeant Mario Manganiello and Officer Edward McCue, and plaintiff Linwood Lee. The officers approached Lee and a companion, Corey Mann, on a corner in downtown Mount Vernon, in order to question Mann. Defendants assert that Lee bumped and threatened the officers, and vocally interrupted them as they attempted to speak with Mann. Lee asserts that he was neither loud nor belligerent, and in fact was cooperating with the officers in their questioning.

The encounter ended in Lee's arrest for intentionally interfering with the officers in the course of their duties. He was handcuffed and taken to police headquarters, where he was released without charge.

Lee now seeks damages from the two officers and the City of Mount Vernon for violations of 42 U.S.C. § 1983, false arrest, false imprisonment, battery, and infliction of emotional distress.

Defendants move for summary judgment on the grounds of qualified immunity and failure to state a claim for relief under § 1983. For the reasons stated below, that motion is granted in part and denied in part.

### Facts

The following facts are not in dispute.

On May 7, 2003, at around 10:00AM, plaintiff Linwood Lee met his friend Tony Bagby in front of a grocery store on the corner of West 5th Street and South 8th Avenue in Mount Vernon. Transcript of Plaintiff Linwood Lee's 50–H hearing ("50–H Trans.") at 9. Soon thereafter, they were joined by Corey Mann, the son of a close friend of Lee's. The three remained in front of the store for almost an hour. 50–H Trans. at 14. While talking to Bagby and Mann, at about 11 AM, Lee saw a man on a dirt bike driving the wrong way down Fifth Street. The man turned onto Eighth Avenue. 50–H Trans. at 18.

At about the same time, the Mount Vernon police received a complaint about a young man driving a dirt bike and carrying a gun in the vicinity of South 9th Avenue. Def. SOMF ¶ 1. The young man

was described as wearing a visor, grey shirt and black pants. Def. SOMF ¶ 2. Mount Vernon police officers responded to the complaint.

That is the end of the undisputed issues of fact. After this point, there is no agreement between the parties about what occurred. Because one must view the facts most favorably to plaintiff when deciding a motion for qualified immunity, I will recount Lee's side of the story first.

Plaintiff claims the first police car to respond arrived twenty minutes after he observed the motorbike. 50–H Trans. at 24–25. The car contained two unnamed plainclothes officers, who approached the three and ordered them to put their hands up. Plaintiff's Statement of Material Facts, ¶ 25. One officer demanded identification from Mann and asked him where the moped was. Mann, at first, did not understand the officer's questions. *Id.* Lee tried to explain that Mann had no moped, but that a boy riding a dirt bike had recently passed them. Pl. SOMF ¶¶ 26.

Defendant Manganiello arrived in a second car. 50–H Trans. at 26. He immediately began asking about "the gun," which had not been mentioned previously. When Lee tried to explain to Manganiello about the boy on the moped, he was told to "shut the fuck up." 50–H Trans. at 27.

At that point, defendant McCue arrived in a third police car. *Id.* McCue emerged from the car and immediately confronted Lee—saying, "You want some of this?" and, "You want to be arrested?" Pl. SOMF ¶ 29. He grabbed Lee, handcuffed him, and slammed him into the hood of a truck. *Id.*

At no point, according to Lee, was he told to step away from Manganiello and Mann, nor did he make contact with any officer or challenge the police to a fight. Pl. SOMF ¶¶ 30–31.

Lee claims that the handcuffs were applied too tightly and that his wrists were injured as a result. Pl. SOMF ¶ 32. He agrees that he was not bleeding as a result of this incident. Def. SOMF ¶ 23.

The officers, predictably, have an entirely different version of events.

Defendant claims that, when Sgt. Manganiello responded to the call, and reached the corner where Mann, Lee, and Bagby were standing, he observed Mann wearing an outfit matching the description of the suspect. *Id.* Sgt. Manganiello exited his vehicle and approached the three. Def. SOMF ¶ 4. Defendants' Statement of Facts does not mention the presence of plainclothes officers on the corner prior to Manganiello's arrival.

Manganiello asserts that he approached the three men to try to talk to Mann but Lee interfered. Def. SOMF ¶ 4. Specifically, Manganiello claims that Lee ".... was continually shouting and screaming and using obscenities." Manganiello Deposition (Mang. Dep.) at 29. According to Manganiello, Lee then crowded him, bumped him with his body, and told him to "step back." Def. SOMF ¶ 7, Mang. Dep. at 28–29.

McCue witnessed this provocative interaction between Lee and Manganiello. Def. SOMF ¶ 8. McCue claims to have seen Lee bump Manganiello "front-to-front," McCue Deposition at 50; and interfere with Manganiello's questioning of Mann. *Id.* at 54. McCue tried to move Lee away from Mann and Manganiello, prompting Lee to respond, "Are you supposed to be bad?" Def. SOMF ¶¶ 9–10. At that point, McCue placed Lee under arrest, handcuffed him, and took him to police headquarters. Def. SOMF ¶ 13. Lee resisted being handcuffed, but he was not harmed in the arrest. Def. SOMF ¶ 11.

Upon arrival at police headquarters, the handcuffs were removed.[1] Def. SOMF ¶ 17. At the same time, several of Lee's friends, including Bagby (who, all parties agree, witnessed whatever encounter occurred), contacted Police Commissioner Kennedy, who assured them that Lee was to be released. Deposition of Tony Bagby at 31–35. Kennedy then talked to Manganiello and Lieutenant Lifrieri, and Lee was released without being searched. He was never charged with a crime. Def. SOMF ¶ 20–21.

## Discussion

### Standard of Review

Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### Claims Against McCue and Manganiello

The officer defendants move for summary judgment on plaintiff's claims, on the grounds that defendant officers are entitled to qualified immunity for their conduct in arresting Lee for obstruction of justice; that the amount of force used by Officer McCue in arresting Lee was reasonable; that Lee has failed to make out a claim of municipal liability against the City of Mount Vernon; and that Lee has failed to establish a triable issue of fact as to his claims for intentional and negligent infliction of emotional distress.

### The Defense of Qualified Immunity: Waiver

Defendants argue that the individual officers involved in the arrest are entitled to qualified immunity as to plaintiff's federal claims.

Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). To determine whether qualified immunity exists, the court must determined whether, taking the facts in the light most favorable to the party asserting the injury, a constitutional infraction was committed. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the answer to that question is yes, the court must decide the right was well-settled at the time of the alleged violation. *See id.*

An arresting officer is entitled to summary judgment on qualified immunity grounds if, from the view of the record most favorable to the plaintiff, a jury could conclude that arguable probable cause existed. *See Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir.2001); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Actual prob-

---

1. Defendant asserts the cuffs were removed in five or six minutes, Def. SOMF ¶ 17; Plaintiff asserts that they were removed within eight minutes. Pl. SOMF ¶ 17.

able cause is not required; rather defendants are entitled to immunity if, "viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions." *Cerrone*, 246 F.3d at 202 (internal citations omitted). Of course, if the trier of fact determines that probable cause existed, then no constitutional violation in fact occurred; qualified immunity protects officers who, in the mistaken belief that their conduct is justified, deprive an individual of his constitutional rights.

In *Saucier*, the United States Supreme Court directed that issues of qualified immunity should be decided before discovery. Accordingly, this Court issued a Local Rule requiring that any defendant who planned to claim qualified immunity (1) file a pro forma motion for summary judgment on that sole ground with his answer; (2) depose the plaintiff and file papers in support of the motion within thirty days thereafter; and (3) obtain a decision on the motion before conducting any further discovery. The plaintiff's deposition enables the moving defendants to obtain all the particulars of plaintiff's claim and, after hearing them, to evaluate whether—*viewing the facts most favorably to plaintiff*—the defense of qualified immunity is likely to succeed.

The defendant officers in this case did not follow my Local Rule. Instead, they waited until the close of discovery to move for summary judgment on all available grounds.

Under this Court's Local Rule, "A plaintiff who brings an action in which a qualified immunity defense is ordinarily asserted shall send defense counsel a copy of this rule. Failure to proceed in accordance with these rules after receipt of such notice shall operate as a waiver of the defense of qualified immunity as a matter of law."

Plaintiff did not demonstrate that he complied with this rule by sending a copy of this Court's qualified immunity rule to defense counsel and did not argue waiver in his opposition to the motion. I thus have no way of determining whether the defense was waived. Counsel for both sides are directed to observe this rule in the future.

*Qualified Immunity: Merits*

This is a classic example of a case in which qualified immunity cannot be given to the officer defendants because there are too many disputes about what actually happened.

In this case, defendants assert that plaintiff's interference with their attempts to interview Mann constituted conduct that "intentionally prevented or attempted to prevent a public servant from performing an official function by means of intimidation, physical force, or interference," N.Y. Penal L. § 195.05, thus establishing probable cause to arrest him. But Lee denies, categorically, that he interfered with the officers. He has a witness (Bagby) to back him up in his claims. And the disposition of his case (after it received the personal attention of the Police Commissioner!) at the very least suggests that plaintiff's story might be true. For purposes of this motion, I am required, by no less an authority than the United States Supreme Court, to assume that it is true.

 Defendants concede that "freedom from false arrest, false imprisonment, and excessive force are clearly established rights." Br. at 6. Therefore, the question raised by this motion is whether—viewing any disputed facts most favorably to plaintiff—the police officers had at least arguable probable cause to arrest Lee.[2]

---

**2.** Defendants appear to assert that no constitutional violation occurred because plaintiff

does not have a right "that allows him to

On the facts most favorable to plaintiff, the answer is clear. According to plaintiff's version of events, largely corroborated by Bagby's deposition testimony, Lee and Bagby were cooperating fully with the plainclothes officers, and urging Mann to cooperate as well, when Manganiello appeared and instigated a conflict with the plaintiff. According to plaintiff, he did not bump officer Manganiello, verbally interfere with Mann's questioning, or resist being handcuffed or arrested. If we accept plaintiff's version of events (and I have no choice in the matter), then Lee did nothing to provoke his arrest and the officers had neither probable cause nor arguable probable cause to arrest him. Moreover, accepting Lee's version as true, no reasonable officer could have concluded otherwise.

Of course, if I were to accept the officers' version of events, they did have probable cause to arrest plaintiff, and there was no constitutional violation. But on a motion for judgment on the ground of qualified immunity, I may not accept the officers' story insofar as it conflicts with plaintiff's. I may only determine whether, on plaintiff's version of events, the officers had probable cause or arguable probable cause to arrest Lee. They did not.

Defendant's reliance on *Decker v. Campus*, 981 F.Supp. 851 (S.D.N.Y.1997) is misplaced. In *Decker*, plaintiff's own deposition testimony supported defendant's assertion that plaintiff physically interfered with a high-risk rescue operation, necessitating his arrest. *See id.* at 858. In this case, plaintiff denies that he interfered with the officers' questioning of Mann. It should go without saying that this court cannot resolve the numerous disputes of fact that exist in the record. Only a jury can do that.

Therefore, summary judgment is denied as to plaintiff's first cause of action as to the individual officers.

*Intentional Infliction of Emotional Distress: Merits*

The officer defendants are also accused of the highly disfavored tort of intentional infliction of emotional distress. That claim is purely a creature of state law, and is not subject to any qualified immunity. The motion for summary judgment dismissing it is granted.

■ The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Howell v. New York Post Co., Inc.;* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993).

■ Plaintiff has not alleged that he suffered any "severe emotional distress" in any form. Nor is defendants' conduct, even viewed in a light most favorable to plaintiff, sufficiently "extreme and outrageous" to support this claim. Therefore, plaintiff's fifth cause of action against the individual officers must be dismissed.

*Negligent Infliction of Emotional Distress: Merits*

■ The related common law tort of negligent infliction of emotional distress "has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances *where traditional theories of recovery do not.*" *Sheila C. v. Povich,* 11 A.D.3d 120, 130, 781 N.Y.S.2d

---

interfere in the police questioning of Corey Mann during a firearm investigation." Br. at 6. However, Lee's rights to be free from arrest and detention without probable cause are the rights in question in this case. And in any event, the disputed issue in this case is whether Lee actually did interfere with any questioning.

342, 351 (1st Dept.2004)(emphasis added). Such a claim must be premised, "upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Id.*

■ Plaintiff has failed to put forward any facts establishing a prima facie case of negligent infliction of emotional distress. There is no evidence of a breach of duty owed to the plaintiff through defendants' negligent conduct. Furthermore, plaintiff's causes of action for battery and false arrest provide a complete source of recovery for his injuries.[3] Any further claim for negligent infliction of emotional distress would be duplicative of these common law claims. Therefore, summary judgment on plaintiff's sixth cause of action is granted.

*Claims against the City of Mount Vernon.*

■ Plaintiff's claims against the City of Mount Vernon must be dismissed, because plaintiff fails to present any evidence that the City had a policy, custom, pattern or practice of permitting arrests without probable cause or using excessive force. Under § 1983, a municipality cannot be held liable solely on a theory of *respondeat superior* liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Plaintiff must show that the municipal policy was the "moving force [behind] the constitutional violation." *Id.* at 389, 109 S.Ct. 1197 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018 and *Polk County*

*v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). "The mere assertion … that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (1995)(quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993)); *see also McLaurin*, 373 F.Supp.2d at 400–01 (stating that a "claim against a municipality requires, as a predicate, an allegation of a constitutional violation against some individual actor").

■ Plaintiff has presented no evidence addressing municipal policy or custom in support of his claim against the City. Nor has he established a pattern of similar incidents that could give rise to an inference of the existence of such a policy. Therefore, plaintiff's § 1983 claim against the City of Mount Vernon must be dismissed.

■ It is settled law in New York that governmental entities are immune from suit on claims for infliction of emotional distress on public policy grounds. *See Lauer v. City of New York*, 240 A.D.2d 543, 544, 659 N.Y.S.2d 57 (2d Dept.1997) (collecting cases). That disposes of these claims as against Mount Vernon.

However, plaintiff's other state law claims against Mount Vernon may proceed on a theory of *respondeat superior. See Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir.1985). Therefore, to the extent of the state law claims for false arrest and battery, Mount Vernon remains a defendant.

---

**3.** Under these facts. plaintiff's claim for false imprisonment is merged of his claim for false arrest. Under New York law, the elements of false arrest and false imprisonment are the same: the intentional confinement of the plaintiff, where plaintiff was aware of this confinement, plaintiff did not consent, and where the confinement was not otherwise privileged. *See Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir.2003).

### Conclusion

Defendant's motion for summary judgment is granted as to plaintiff's fifth and sixth causes of action, for intentional and negligent infliction of emotional distress, and his first cause of action as against the city of Mount Vernon.

Summary judgment on the remaining causes of action is denied. A trial date for these remaining claims will be scheduled for the soonest available time.

This constitutes the decision and order of the Court.