Catterson, J.,
dissents in a memorandum as follows: I must respectfully dissent. In my opinion, there is no reason to remand for a trial to determine “relative culpability” pursuant to CPLR 1601 between nonparty New York City and defendant contractor HHM Associates, Inc. (hereinafter referred to as HHM) because, for the reasons set forth below, the City was entirely liable for the condition of the road. Thus, the judgment against HHM should be vacated.
This appeal arises out of a personal injury action, in which the plaintiff, a New York City Transit Authority bus driver, claimed that she was injured on December 5, 2001 when the front left tire of the bus she was driving struck a “hole” or “uneven pavement” on Atlantic Avenue in Brooklyn. The plaintiff further claimed that the road was improperly repaired by HHM, and that even if HHM did not create the hole, HHM assumed absolute liability for the condition of the road in its contract with the City.
The record reflects that HHM was hired by nonparty City of *535 New York to replace sewer mains along two miles of road over a three-year period between 2000 and 2003. The contract required that HHM stop work between November 17, 2001 and January 2, 2002 for the holiday season, and backfill any excavations.
HHM’s president testified that on October 1, 2001, HHM workmen backfilled a 75-foot excavation along Atlantic Avenue, pursuant to the terms of the contract. On October 25, 2001, HHM returned to the site in order to connect a small pipe to a manhole. HHM’s president further testified that the excavation was backfilled, and the road restored with temporary asphalt the following day.
The record also reflects that the City hired an engineering consulting firm to inspect and approve HHM’s work. The resident engineer for the project testified that inspectors recorded the work performed by HHM every day to ensure that the work complied with the contract specifications, and, after HHM completed its work, to ensure that the road was safe for traffic during the holiday embargo.
At trial, at the conclusion of the plaintiffs case, HHM moved to dismiss the plaintiff’s complaint for failure to establish a prima facie case, and at the close of the evidence, HHM moved for a directed verdict. The court denied the motions. Subsequently, HHM objected to the court’s charge to the jury that “a contractor ... is liable for injury to a person on the street . . . if, as a result of work performed, . . . the street was in a condition dangerous to persons on the street.” HHM argued that the charge described a landowner’s duty. The court also refused HHM’s request to charge the jury that the City has a nondelegable duty to maintain the road. The jury found in favor of the plaintiff and awarded damages in the amount of $1,675,174.*
Subsequently, the plaintiff moved to increase the award for past medical expenses. By order dated October 15, 2009, the motion court granted the plaintiffs motion and denied HHM’s cross motion pursuant to CPLR 4404 to set aside the verdict, or, alternatively, for a new trial on liability and damages.
HHM now appeals on the grounds that it had no duty to the *536 plaintiff and hence the complaint against it should have been dismissed. Alternatively, HHM argues that the improper jury charges entitle them to a new trial on all issues.
While I agree with the majority that the court erred as to its charges to the jury, for the reasons set forth below, I would vacate the judgment and dismiss the complaint as against HHM on the ground that HHM had no duty to the plaintiff. Rather, the City was entirely liable for the condition of the road. Consequently, in my view there is no need to determine “relative culpability” pursuant to CPLR 1601, and thus no reason to remand for a new trial.
The threshold question, whether HHM had a duty to the plaintiff, is a question of law for the court, not a question of fact for the jury. (Sheila C. v Povich, 11 AD3d 120, 125 [1st Dept 2004].) The plaintiff argues that HHM’s duty to her arises either from HHM’s contract with the City to “protect finished and unfinished work against any . . . injury,” or from HHM’s negligent creation of a defect in the road. The first argument, that “[HHM] is responsible whether they created [the alleged hole] or did not [because] they assume [d] that responsibility” from the City pursuant to the contract, is without merit.
It is well established that a contract such as the one between HHM and the City generally does not create a duty owed by the contractor to the general public. (Moch Co. v Rensselaer Water Co., 247 NY 160, 168 [1928].) As Chief Judge Cardozo explained in Moch, the duty that the contractor owes is “to the city and not to its inhabitants” who benefit from the contract only incidentally. (Id. at 165.) Thus, HHM’s duty under the contract was to the City, not the plaintiff. Nor did the contract relieve the City of its duty to the plaintiff. A municipality’s duty to maintain the roads and highways in a reasonably safe condition is nondelegable. (See Stiuso v City of New York, 87 NY2d 889, 891 [1995].)
However, the plaintiff, having failed to bring a claim against the City, also attempts to foist tort liability onto HHM by arguing that by leaving a hole in the street HHM “launched a force or instrument of harm.” (See Espinal v Melville Snow Contrs., 98 NY2d 136, 140, 142 [2002] [a defendant contractor “launche(s) a force or instrument of harm” when it “negligently creates or exacerbates a dangerous condition” (internal quotation marks omitted)]; see also Church v Callanan Indus., 99 NY2d 104, 111 [2002] [“failing to exercise due care in the execution of (a) contract” may “launch( ) a force or instrument of harm” (internal quotation marks omitted)].) In my opinion, this argument fares no better.
*537 As a matter of law, a contractor cannot be liable in tort for failing to exercise due care in the execution of a contract where it complies with the contract specifications. (See e.g Davies v Ferentini, 79 AD3d 528, 529-530 [1st Dept 2010] [because the defendant contractor’s work was performed pursuant to the DOT’s specifications, defendant fulfilled its contract and did not launch a force or instrument of harm]; see also e.g. Luby v Rotterdam Sq., L.P., 47 AD3d 1053, 1055 [3d Dept 2008]; Gee v City of New York, 304 AD2d 615, 616 [2d Dept 2003].) Here, it is undisputed that HHM’s work was inspected and approved by the City’s engineering consultants as compliant with the contract specifications. The resident engineer on the Atlantic Avenue project testified that he approved the backfilling and temporary resurfacing done by HHM on October 1 and again on October 26, 2001.
The majority’s argument — that the City’s acceptance of the work was not “final” as defined by the contract because there was no issuance of a certificate of completion signed by the Commissioner — elevates form over substance. It is undisputed that after HHM stopped work on the roadway on October 26, 2001, the City inspected HHM’s work, approved it, and opened Atlantic Avenue to traffic, thereby implicitly authorizing the road as safe for use. In my view, this was a de facto final acceptance as to the work that HHM had completed so far. Thus, the condition of the roadway was the City’s responsibility until HHM resumed work after the holiday break. To subject HHM to liability for a purported defect arising from work approved by the City one month prior to the accident would create the very type of “indefinitely extended” duty “to an indefinite number of potential beneficiaries” that the Court of Appeals rejected more than seven decades ago in Moch. (247 NY at 168.)

 The jury awarded the plaintiff $50,000 for past pain and suffering, and $140,000 for past lost earnings. It awarded $50,000 for 35 years of future pain and suffering, $100,000 for 35 years of future medical expenses, and $1,334,174 for 12.5 years of future lost earnings. However, two months after her discectomy in October 2002, the plaintiff was cleared to return to work as a bus operator and continued working for five years until July 2007, when she went on disability leave due to an unrelated foot condition. She was terminated after she refused, without consulting a physician, a transfer to a sedentary position, and has not worked since.